Owen MoGtiverit, J.
This is a proceeding brought by the trustee of a trust created under an agreement dated May 10, 1911, for the final judicial settlement of the account of the trustee and for a construction of said agreement. By stipulation, there is presently for determination solely the construction question.
The income from the trust was to be paid to the settlor’s son, John J. Sullivan, for his life. He died on December 28, 1953; the principal was to be disposed of pursuant to paragraph 4th of the trust agreement, which reads as follows: “ This trust shall continue as long as my said son John J. Sullivan shall live and at his death the said sum and any accumulations thereto shall be equally divided, share and share alike, between my other children, and if any of my said other children should then be dead leaving descendants the share of such deceased child shall go to his or her descendants.”
The settlor had five children other than the income beneficiary; Julie S. Tierney still lives and there is no question but that she is entitled to a share of the principal.
*996 A second child, Bussell Sullivan, predeceased the life beneficiary without leaving issue. He left as his heirs at law his mother Kate G-. Sullivan and his father, the settlor M. H. Sullivan. His mother died intestate on June 30, 1937 and her heirs at law were her then surviving children. M. H. Sullivan died on October 14,1912 leaving a will which devised and bequeathed his estate to his wife and issue.
A third child, Martin H. Sullivan, Jr., predeceased the life beneficiary in 1950, survived by a daughter Julie Sullivan and by two children of Julie Sullivan, Seymour M. Bauer and Jeffrey Stephen Bauer, and by another two grandchildren, Carolann Mulheron and Edward M. Mulheron, who are children of a deceased daughter.
A fourth child Daniel F. Sullivan predeceased the life beneficiary without leaving issue in 1948.
A fifth child, Marie Bead, died on January 1,1912 leaving her surviving her husband, W. Nash Bead and her daughter, Marie Ellen Bead. Marie Ellen Bead died on the same day two hours after her birth leaving her surviving her father, W. Nash Bead. W. Nash Bead died in 1952 leaving his estate to his widow Jean Craik Bead and his son Nicholas C. Bead.
The Bauer children and the infant Mulheron child each appear by separate guardians ad litem.
The first question is whether the remainder interests of Bus-sell Sullivan and Daniel F. Sullivan, each of whom died without leaving issue surviving, were contingent upon them surviving the life beneficiary, or were vested subjected to being divested only if either or both predeceased the life beneficiary leaving issue surviving.
The next question is whether the remainder interest of Marie Ellen Bead (the infant who succeeded to her mother’s interest upon her mother’s death), was divested by her death prior to the death of the life beneficiary, or whether such interest was vested absolutely in her and devolved through her estate.
In cases involving gifts to named persons with substitutionary gifts to the issue or descendants of such persons who are deceased, there is little doubt that such gifts will be construed as being vested (Matter of Krooss, 302 N. Y. 424). In the most recent cases in which there were involved gifts to a class with a substitutionary gift to the issue or descendants of deceased members of the class, the decisions are to the effect that the gift to each member of the class is contingent upon his surviving the life beneficiary.
In Matter of Bierhoff (271 App. Div. 743, affd. 297 N. Y. 694) the question was whether the estates of two children who pre *997 deceased the life tenant without issue were entitled to share in the remainder. The Surrogate therein had held that the phrase “ among my other children ” was equivalent to naming them and accordingly the remainders were vested. The Appellate Division reversed and stated that there were no words of present gift but only words of division and distribution; that the inference to be drawn from the direction that the share which any of his children “then” deceased would have received, “if living ”, was to go to the issue of such deceased child, is that children were to share only “ if living ”, and that a consideration of the will as a whole indicated he intended his estate to remain in the family. The court thus held that the estates of the two children predeceasing the life tenant were not entitled to share.
A similar conclusion was made in May v. May (209 App. Div. 19) wherein the court utilized the divide and pay over rule, and held that the testatrix did not contemplate providing for the husbands of those of her children dying without issue, and denied the application of the estate of the one so dying. (See, also, Clark v. Cammann, 160 N. Y. 315.)
The language contained in the will and the surrounding circumstances should be examined to ascertain the intent of the testator. If it then is concluded that the testator intended the remainderman to take a vested estate, or interest subject to divestiture, in case of his death leaving issue, the issue, being substituted for the parent or ancestor, would have the same right of title or ownership. But where the language of the will and surrounding circumstances may evidence an intention to make ownership depend upon the survival of the remainderman, or the survival of his issue, in case of his death during the period of the life estate leaving issue, then if the remainderman died leaving a child who in turn had died during the period of the life estate, nothing passes to the child’s representatives. This would be the result in the usual case of a gift to a class, to take effect at the termination of a life estate or trust, accompanied by words which import a substitution of issue or descendants in case any of the presumptive members shall die leaving issue (2 Davids on New York Law of Wills, § 947).
It is apparent from the trust agreement under consideration that it had for its main purpose the assurance of an income for the settlor’s son John. In order to dispose of the fund upon John’s death, the settlor sought to select the persons who would be entitled to the corpus; he directed the fund to be divided between his other children and if any of these should then be dead leaving descendants, his share to go to such descendants; *998 he made no present gift to the remaindermen, but directed only that the fund be divided among them; he did not name his other children, but merely identified them in language which describes them as a class at the time for distribution, and he then provided for a substitution of descendants in the case of any child who might then be dead.
There are indications of the settlor’s intent to give his property to persons of his own blood. In the settlor’s will, probated shortly after this trust was created, in item “ 10 ” he provided that “ no widow of either of my said sons nor husbands of either of my daughters shall ever come into possession of said property ”.
In Matter of Bishop (195 Misc. 204) a trust was created for one of the testator’s eight children, the remainder to be divided among her brothers and sisters, share and share alike, the issue of any deceased child to take the share the parent would have taken if living. Five of the children survived the testator but predeceased the life beneficiary. The court held that a gift to a class was intended and that survivorship at the termination of the trust was an essential condition to participation in the gift.
There is also a canon of construction to the effect that where there is no direct gift to the beneficiaries but only a mandate to the trustees to divide and deliver, the gift is interpreted as contingent rather than vested (New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93; Matter of Bostwick, 236 N. Y. 242; Salter v. Drowne, 205 N. Y. 204).
Accordingly, the court holds that the remainder of the trust vested in the children of the settlor surviving at the death of John J. Sullivan, the life tenant and in the surviving descendants of children of the settlor who predeceased John J. Sullivan.
The court further holds that distribution to issue of a deceased child of the settlor is to be made per stirpes.
As was stated by the Surrogate in Matter of Bishop (195 Misc. 204, 207, supra): ‘ ‘ When a gift to a class is coupled with a direction that issue of deceased primary members are to take the share of their parent, it is presumed that the donor intended that issue take per stirpes. (Matter of Lawrence [238 N. Y. 116], supra; Central Hanover Bank & Trust Co. v. Pell, 208 N. Y. 354, 360; Matter of Farmers Loan & Trust Co., 213 N. Y. 108, 174; 2 Simes, Future Interests, p. 245 and cases cited.) There are thus present in this will more than those slight indications of interest to which the per capita rule readily yields.” (See Matter of Gemmell [Clyde], 64 N. Y. S. 2d 202; Matter of Walbridge, 192 Misc. 746.)
*999 In accordance with the foregoing conclusions the remainder is now distributable one half to Julie S. Tierney, one quarter to Julie Sullivan, one eighth to Carolann Mulheron and one eighth to Edward M. Mulheron.
The application for the other relief requested is held in abeyance.