Donald H. Mead, J.
Plaintiff, Fidelity Casualty Company of New York, (hereinafter referred to as “ Fidelity ”), commenced an action against Maryland Casualty Company (hereinafter referred to as “Maryland”), and Willard Brummett, defendants, for a declaratory judgment to determine “ (1) whether the Maryland Casualty Company insurance policy or the Fidelity and Casualty Company of New York insurance policy affords primary coverage or secondary coverage to Both Steel Corporation in the action brought against it by Willard Brummett; and (2) whether Maryland Casualty Company or Fidelity and Casualty Company of New York should provide Both Steel Corporation with a defense in the action brought against it by Willard Brummett ”.
The defendant Maryland ’ ’, in its answer, demands judgment dismissing plaintiff’s complaint and prays for declaratory judgment determining: “ 1. That the said policy of defendant, Maryland Casualty Company, does not provide coverage under its terms and conditions to defendant Both Steel Corp., by reason of the circumstances of this accident and/or by reason of the breach of the condition of its policy concerned with prompt notice of accident and claim by or on behalf of the insured; and, 2. that Maryland Casualty Company does not owe Both Steel Corp. a defense in the action brought by Willard Brummett; and if any coverage is afforded Both Steel Corp. by the said Maryland Casualty Company policy it is subject to the condition of its policy concerning liability where there is other insurance which condition is set forth in the 3rd-defense herein
The defendant, Maryland Casualty Company, moves, pursuant to CPLB 3212, for summary judgment in favor of defendant “ Maryland ” and against plaintiff “ Fidelity ” and the defendant, Willard Brummett for the relief prayed for in Maryland’s ” answer upon the grounds that there are no triable issues of fact and that as a matter of law there is no merit to the cause of action asserted in “ Fidelity’s ” complaint.
It appears that the defendant, Brummett, employed as a truck driver for Philip Cordon & Sons, Inc., on May 8,1964, had driven his employer’s truck to certain premises in the city of Oswego, New York known as the Old Diamond Match factory on Lake Shore Drive to pick up a load of scrap metal; that while the truck was being loaded by the use of a crane owned by Both Steel Corporation and being operated by its employee, Harvey *118 Boss, the truck driver, Brummett, was struck by a piece of scrap metal resulting in personal injuries to him.
Plaintiff in this action (Fidelity), on May 8,1964, had in effect a public liability policy of insurance insuring Both Steel Corp., within the limits of the policy, for all damages caused by reason of the negligence of its employees while engaged in the scope of their employment. The defendant in this action (Maryland), on the other hand, had in effect on the date of the accident, a comprehensive automobile liability policy insuring Brummett’s employer, Philip Gordon <& Sons, Inc., which policy insured the motor vehicles of said corporation and the lawful users thereof against damages caused to persons injured by reason of the negligent operation or use of said vehicles. This policy further provided that the unqualified word “insured” includes the named insured and also any person while using the vehicle and any person or organization legally responsible for the use thereof, provided the actual use of the vehicle is by the named insured or with his permission. The Maryland policy also provided that use of an automobile or vehicle includes the “ loading and unloading thereof. ’ ’
It is alleged in the bill of particulars furnished by plaintiff (Fidelity) that Fidelity first learned of the accident on May 12, 1964 when it received a written notice thereof from its agents, Shimberg and Gerber. Thereafter, and on June 9,1964, Fidelity received a further notice of accident from the injured, Brummett. However, it is claimed in Fidelity’s bill of particulars that it did not learn of Maryland’s coverage of the Philip Gordon & Sons, Inc. truck until December 5, 1964, almost seven months after the happening of the accident. Fidelity’s bill of particulars further alleges that sometime between December 5, 1964 and January 15,1965, Fidelity’s district claims manager called Maryland’s district claims manager on the telephone regarding the injured Brummett’s claim. That on January 15,1965 Fidelity’s district claims manager served written notice upon Maryland’s district claims manager demanding that Maryland defend Both Steel Corp. against any claim arising out of Brummett’s accident. Thus, the written notice of accident required under the Maryland policy was not given until some eight months subsequent to the occurrence of the accident.
On or about March 30, 1965, Brummett commenced an action against Both Steel Corp. to recover damages for his personal injuries allegedly sustained by reason of the negligence of Both Steel Corp. or its employee in the loading of the truck. On or about April 1, 1965 the summons in said action was forwarded by the plaintiff, (Fidelity),, to the defendant, (Maryland), with *119 a demand that Maryland appear and defend Both Steel Corp. under the provisions of Maryland’s policy issued to its assured, Philip Gordon & Sons. Inc. On June 30, 1965 the complaint in said negligence action was forwarded to Maryland by Fidelity’s attorneys with a similar demand that Maryland appear and defend Both Steel Corp. in said action. As a result of Maryland’s disclaimer and refusal to honor said demand, Fidelity instituted the action for declaratory judgment hereinbefore described. As previously indicated, Maryland now moves for summary judgment dismissing Fidelity’s complaint.
Defendant, (Maryland), in its motion papers and upon oral argument, relied entirely in support of its motion for summary judgment upon its contention that Fidelity and/or its insured, Both Steel Corp., failed, as a matter of law, to comply with the notice provisions of Maryland’s policy in that notice of accident was first given to Maryland on or about January 15, 1965, more than eight months after the happening of said accident.
The “notice of accident” provision of the policy provides: “ When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.”
The policy further provides that: “ No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy”.
In brief, it is Maryland’s claim that notice given some eight months subsequent to the accident is untimely as a matter of law so as to preclude any liability or recovery under the provisions of Maryland’s policy by reason of the accident in question.
In Macy & Co. v. General Acc. Assur. Corp. (4 Misc 2d 89) plaintiff brought an action for judgment declaring plaintiff an “insured” under the liability policy of defendant insurance company entitling plaintiff to defense and coverage in an action brought against it by an employee of a seller of merchandise to plaintiff. Said employee was injured while working alongside the driver of a truck employed by a trucking concern which was unloading goods at plaintiff’s warehouse from said truck. The court found that plaintiff was an insured and as such, entitled to defense and protection by defendant as an insurer under the terms of defendant’s policy except for plaintiff’s failure to fulfill the conditions of the policy as to notice of accident. The court stated, at page 91: “ Our courts favor broad construction *120 of the omnibus clause in policies as to loading and unloading in commercial pick-ups and deliveries. They have interpreted them as covering the complete operation, extending even to accidents involving the transported goods or relating to occurrences away from the truck during the unloading process. (Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490; Lowry v. Macy & Co., 119 N. Y. S. 2d 5.) In the light of such broad construction and the concept that such omnibus coverage extends to the complete unloading operation. Macy became an insured entitling it to defense and protection by General as the insurer.”
The fact that the accident in the case at bar happened while loading a truck whereas the accident in the Macy case occurred during the unloading of a truck is of no legal consequence. (Lowry v. Macy & Co., 119 N. Y. S. 2d 5; see, also, Wagman v. American Fid. & Cas. Co., 304 N. Y. 490.)
Since it is well established by the cases (Greaves v. Public Serv. Mut. Ins. Co., 5 N Y 2d 120; Wagman v. American Fid. & Cas. Co., supra) that Both Steel Corp. would be an insured under the terms of Maryland’s policy and as such entitled to a defense and coverage under the terms thereof, we need only be concerned, on this motion by defendant (Maryland) for summary judgment, with the narrow issue as to whether the notice of accident was so untimely as to constitute a breach of condition as a matter of law.
In Sillman v. Twentieth Century-Fox (3 N Y 2d 395, 404), the Court of Appeals said: To grant summary judgment it must clearly appear that no material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118). This drastic remedy should not be granted where there is any doubt as to the existence of such issues (Braun v. Carey, 280 App. Div. 1019), or where the issue is ‘ arguable ’ (Barrett v. Jacobs, 255 N. Y. 520, 522); issue-finding, rather than issue-determination, is the key to the procedure ’ (Esteve v. Avad, 271 App. Div. 725, 727).”
In the case at bar there are no issues of fact to be tried since it is conceded by the parties that written notice of the accident, as required by the policy provisions, was first given to Maryland on January 15, 1965, more than eight months after the happening thereof. In considering whether Fidelity’s notice was timely it should be observed that there are numerous cases involving the question of whether, in a particular situation, notice of the happening of an accident was given “ as soon as practicable ” to the insurance carrier. Some of these involve notice by a named insured, others, by an unnamed insured and some, as in the situation here, by one carrier to another.
*121 In West Virginia Pulp Co. v. Merchants Mut. Ins. Co. (10 A D 2d 451, 455-456) the court, in analyzing the leading cases on timeliness of notice said:
“ In Deso v. London & Lancashire Ind. Co. (3 N Y 2d 127), a tenant fell on the insured’s premises February 12, 1951 and it appeared that no injury had occurred. However, his back began to bother and on May 28, 1951 he was told by his doctor that a serious back injury had resulted from the fall and this information was passed on to his landlord, the insured. The insured did not give notice to the insurer until July 18, 1951, over a month and half later. A jury found that notice had been timely and the Appellate Division affirmed, but the Court of Appeals held that as a matter of law notice had not been given as soon as practicable. The court stated the general rule: It is also well settled that the reasonableness of a delay, where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its seriousness are offered as an excuse, is usually for the jury (Rushing v. Commercial Cas. Ins. Co., 251 N. Y. 302, 304; Metcher v. Ocean Acc. & Guar. Corp., 226 N. Y. 51; see, also, Gluck v. London & Lancashire Ind. Co. of America, 2 A D 2d 751, affd. without opinion 2 if Y 2d 953). On the other hand, absent an excuse or mitigating circumstances, courts have assumed the function of determining fulfillment of the condition’ (pp. 129-130).
“ In the early case of Melcher v. Ocean Acc. & Guar. Corp. (226 N. Y. 51), it was held that the jury could find that notice was timely, if given at the time when the insured first became aware of the accident (three months after the accident) if prior to that he had no knowledge of the accident or no notice of any claim. More recently in Gluch v. London & Lancashire Ind. Co. of America (2 A D 2d 751, affd. 2 N Y 2d 953), the accident occurred on October 24,1947 and the insured did not give notice until March 9, 1948 when served with a summons. The insured testified that he had not thought he was covered. The lower court directed a verdict for the company but the Appellate Division reversed, holding there was a triable issue as to whether notice was timely. In referring to this case in Beso (supra), the Court of Appeals said: * Because the effect of the policy language governing coverage was at the time of the accident and for some time after it by no means well settled, the reasonableness of the insured’s confusion and consequent delay was deemed a question for the jury ’ (p. 131).
“The case of Marcus v. London & Lancashire Ind. Co. of America (6 A D 2d 702, affd. 5 N Y 2d 961), involved an unnamed insured. There the insured had a liability policy covering the *122 members of Ms household and his daughter was injured on March IS, 1956 through an act of the insured’s mother who was residing there at the time. The insured did not give notice until November, 1956 when he first became aware that his insurance might cover the situation. In affirming the denial of the company’s notice for summary judgment the Appellate Division said: ‘ On the basis of the foregoing facts, which are set forth in the papers on appeal, it appears that there is a triable issue of fact as to whether there was compliance with the condition in the policy to which reference has been made, in the light of the fact that timely and adequate notice by the respondent herself or by her grandmother, or on their behalf, would have satisfied the condition, and the fact that the standards by which notice by them or on their behalf are to be judged differ from the standards by which notice by a named insured is to be judged ’ (p. 703) (emphasis added). Thus indicating that sometimes a more lenient standard is applied to an unnamed insured. However, it would appear clear that even then, notice must be given as soon as the unnamed insured becomes aware of his coverage.”
It must be pointed out that in the case at bar we are not dealing with uninformed insureds, named or unnamed, but rather with insurance carriers whose agents and employees are presumed to be experienced and knowledgeable in insurance matters. Clearly, in the posture of this case, Fidelity, in seeking to evade primary responsibility and coverage, must be considered to be the representative of its insured, Both Steel Corp. If Fidelity seeks the aid of the court under such circumstances it should be held to a degree of care in notification consistent with the provisions of the policy it seeks to enforce, not as an insured but as a coinsurer.
The policy provision that notice be given to the insurance company “ as soon as practicable ” is designed to enable the insurer to investigate the circumstances of an accident while the matter is fresh in the minds of all, and to be able to make as timely and competent defense against filed claims as may be possible. Upon the happening of an accident, a prompt, as distinguished from a delayed investigation of the facts of occurrence can so greatly affect the efficiency of a defense as to change the very character of the risk insured. It follows, therefore, that the notice requirement of Maryland’s policy applies not only to the named insured but also the unnamed additional insureds under the omnibus clause and to their carrier as well. Certainly, Fidelity should be held to the same degree of promptness as would be expected of its assured acting with complete knowledge and awareness of the notice requirements of the policy.
*123 Liability insurance carriers do not operate in a vacuum. They are presumed to have knowledge of well-established principles of law in the field of insurance. In their day-to-day operations they are confronted with accidents involving the loading and unloading of vehicles under the omnibus provisions of insurance liability policies presenting facts similar to the situation found here. Nor may the plaintiff claim in good conscience that it was unaware of the defendant’s policy and coverage thereunder. In this enlightened era, it was bound to know how easily such information could be obtained. In Mack v. Great Atlantic & Pacific Tea Co. (25 A D 2d 482), the Fourth Department, in holding that the trial court’s finding of “ timely notice” was against the weight of the evidence, wrote: The finding of the trial court that notice of the accident was given by the representative of third-party plaintiff to third-party defendant as soon as practicable ’ as required by the policy provision is contrary to the proof. Such representative did not use due diligence in 1960 to ascertain the name of the insurance carrier affording coverage to the truck being unloaded at the time of the accident by plaintiff in the main action. Proof of financial security must be furnished contemporaneously with the registration of a motor vehicle (Vehicle and Traffic Law,. § 312) and any person may obtain a copy of the certificate of insurance from the Department of Motor Vehicles upon payment of the legal fee (cf. 1942 Atty. Gen. 194). The lack of diligence on the part of the representative of third-party plaintiff is emphasized by the alacrity with which the required information was obtained and notice given to third-party defendant some two years later when the main action was commenced. ’ ’
There are no facts here presented to establish an extenuating circumstance which would excuse plaintiff’s failure to give written notice “ as soon as practicable ”. It had knowledge of the accident on May 12, 1964, four days after the happening thereof, and must, or should have known that Philip Gordon & Sons, Inc., had insurance coverage and that it had the type of coverage that it did, in fact, have.
For the reasons stated, defendant’s motion for summary judgment dismissing plaintiff’s complaint is hereby granted without costs. The decision herein renders unnecessary any determination of the issue of primary or secondary coverage.